UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

———————————————

In re:

NATHAN C. MAAS,                                          Case No. GL 09-11416
                                                        Chapter 7
                    Debtor.

_____/

NATHAN C. MAAS,

                    Plaintiff,                          Adv. Proc. No. 12-80384

v.

NORTHSTAR EDUCATION
FINANCE, INC.,

                    Defendant.

_____/


## OPINION REGARDING NONDISCHARGEABLE DEBT
## ADVERSARY PROCEEDING

Appearances:

Nathan C. Maas, Lansing, Michigan, *Pro Se* Debtor-Plaintiff.

Aaron J. Scheinfield, Esq., Southfield, Michigan, attorney for Northstar Education Finance, Inc., Defendant.


## I. INTRODUCTION.

In this adversary proceeding, Nathan C. Maas (the "Debtor") seeks a determination

that four loans he received while enrolled at Thomas M. Cooley Law School are not

educational benefit loans under § 523(a)(8) of the Bankruptcy Code,[1] and that the resulting

_____

[1] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive. Specific provisions of the Bankruptcy Code are referred to in this opinion as "§___."

debts alleged by the lender, Northstar Education Finance, Inc (the "Defendant" or "Northstar") are dischargeable in his chapter 7 case.[2] For the reasons that follow, the court concludes that the debts to Northstar are not dischargeable.

## II. JURISDICTION.

This court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a); Local Rule 83.2(a) (W.D. Mich.). This adversary proceeding is a statutory core proceeding. 28 U.S.C. § 157(b)(2)(I) (determinations regarding dischargeability of a debt). Notwithstanding the holding in Stern v. Marshall, __ U.S. __, 131 S. Ct. 2594, 180 L.Ed.2d 475 (2011), this court is constitutionally authorized to enter a final order. See Tibble v. Wells Fargo Bank, N.A. (In re Hudson), 455 B.R. 648, 656 (Bankr. W.D. Mich. 2011) (the Stern decision is extremely narrow; "[e]xcept for the types of counterclaims addressed in Stern v. Marshall, a bankruptcy judge remains empowered to enter final orders in all core proceedings"); cf. Waldman v. Stone, 698 F.3d 910, 921 (6th Cir. 2012) (bankruptcy court lacks constitutional authority to enter final judgment on debtor's state law fraud claims against creditor), cert. denied, 133 S. Ct. 1604 (2013).

## III. FACTS AND PROCEDURAL HISTORY.

The Debtor filed a voluntary chapter 7 petition on September 28, 2009. (Dkt. No. 1.)[3] The Debtor received a discharge on February 23, 2010, and the chapter 7 case was

---

[2] As discussed in greater detail below, see Section III infra, the Debtor does not assert that repayment of the loans would constitute an "undue hardship" under § 523(a)(8).

[3] References to the court's docket in the Debtor's base case are cited herein as "Dkt. No. __;" references to the docket in the adversary proceeding are cited as "AP Dkt.

closed on March 17, 2010. (Dkt. Nos. 13 & 15.) The Debtor filed a motion to reopen the case on September 27, 2012. (Dkt. No. 16.) An order reopening the case for the sole purpose of permitting the Debtor to file this nondischargeable debt adversary proceeding was entered on October 2, 2012. (Dkt. No. 17.)

The Debtor filed a complaint against Northstar and Total Higher Education, Inc. (collectively, the "Defendants"), on November 16, 2012. (AP Dkt. No. 1.) The complaint alleges that the Debtor received several loans from Total Higher Education, Inc.,[4] and their "alleged successor in interest," Northstar, while he was enrolled at Thomas M. Cooley Law School between 2000 and 2002. According to the complaint, these loans were "unsecured cash advance loans" given for the purpose of providing the Debtor with cash for general living expenses while he was in law school and immediately after graduation. The complaint alleges that the loans do not constitute "educational benefit" loans as defined by § 523(a)(8), and therefore should be subject to the Debtor's chapter 7 discharge.

The Defendants filed an answer to the complaint on December 17, 2012. (AP Dkt. No. 7.) Attached as Exhibit A to the Defendants' answer are applications for four (4) separate loans submitted by the Debtor. The loan applications identify the loans as "Loan 402," "Loan 405," "Loan 408," and "Loan 411." The applications for Loan 402 were signed

---

No. __."

[4] The Defendants' answer alleges that Total Higher Education is the name of the loan program and is not a separate corporate entity. On May 14, 2013, the parties filed a stipulated motion to dismiss Total Higher Education, Inc. from this adversary proceeding. (AP Dkt. No. 37.) The court entered an order dismissing Total Higher Education, Inc. on May 21, 2013. (AP Dkt. No. 39.)

by the Debtor on December 29, 1999, and January 19, 2000.[5] The applications for Loan 402 request a loan in the amount of $11,163 for the "enrollment period" from January to August 2000. The application for Loan 405 was signed by the Debtor on August 1, 2000, and requests a $11,163 loan for the "enrollment period" of September, 2000, through April, 2001. The application for Loan 408 was signed on March 26, 2001. It requests a loan in the amount of $2,500 for the "enrollment period" from May through December, 2001. The application for Loan 411 indicates that it is for a "T.H.E. BarPREP Loan." The application was signed by the Debtor on April 9, 2002, and requests a loan in the amount of $7,500 to be disbursed on April 20, 2002.[6]

The applications for Loans 402, 405, and 408 are on nearly identical forms. Each application states that it is for a private loan through the Total Higher Education ("T.H.E.") Loan Program. Provisions on the first page of the loan applications state:

> INTRODUCTION. By preparing the above Application, signing this Application and Promissory Note ("Note") and submitting it to the Lender, Borrower requests the Lender to make *this education assistance loan* ("Loan") in the amount and on the terms described in the Note under the Lender's Total Higher Education ("T.H.E.") Loan Program ("Program").
>
> PARTIES: In this Note, the word "Borrower" refers to the Student and, if applicable, the Cosigner identified in the Application . . . . *The "Student" is the student whose education this Loan is being made to finance.* The word "Lender" means University National Bank  or any holder or person to whom this Note has been transferred. "School" means a college or university which is approved by the Lender and which is participating in the Program.

---

[5] A handwritten note on the first Loan 402 application indicates that the application was "incomplete" because it did not include the requested loan amount. It appears that the Debtor submitted a second application to correct this deficiency.

[6] The disbursement dates and amounts of each loan are also summarized in the Defendants' Answers to the Debtor's First Set of Interrogatories. (AP Dkt. No. 24.)

4

(Dft. Exh. A) (emphasis added).  Each loan application also includes a provision which states:

> DISCHARGE THROUGH BANKRUPTCY: This Loan is made for *educational purposes* under a program that is funded in part by a non-profit organization and it not eligible to be discharged in bankruptcy.

(Id.) (referred to herein as the "Discharge through Bankruptcy provision") (emphasis added.)  The loan applications also contain a "NOTICE" at the bottom which states:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF . . . .

(Id.) (referred to herein as the "Consumer Credit Notice provision").  The Debtor is listed as the borrower in the "Student Section" of each application and signed the applications as the "Student."  Thomas M. Cooley Law School electronically certified the "School Section" of each application.

The application for Loan 411 is on a slightly different form.  It states that the "Student must be in the final year of law school in a qualifying program and on target to graduate" to qualify for the T.H.E. BarPREP Loan.  The form further provides that the "Student must have a prior borrowing relationship with T.H.E." to obtain the loan.  Again, the Debtor signed the application as the "Student."  The "School Section" and many of the other provisions of the Loan 411 application are illegible.[7]

---

[7] A more legible copy of the Loan 411 application is attached to the Defendant's motion for summary judgment.  That copy shows that the "School Section" was signed by Dawn M. Butler, an individual who is not otherwise identified in the record.  Although the second page of the application is not included, the first page contains the same INTRODUCTION and PARTIES provisions as the other loan applications.

A first pretrial conference was held before this court on February 20, 2013.  The court subsequently issued a First Pretrial Order.  The pretrial order identified the issues raised in this adversary proceeding, including the issue of whether repayment of the loans would result in an undue hardship under § 523(a)(8).  (AP Dkt. No. 15.)  After the pretrial conference, the Debtor sent a letter to Defendants' counsel and the court stating that he did not intend to raise the issue of undue hardship in this adversary proceeding.  (AP Dkt. No. 17.)

On March 18, 2013, the Defendants filed a motion for summary judgment.  (AP Dkt. No. 18.)  The Defendants' motion asserts that the loan applications conclusively establish that the four loans made by Northstar to the Debtor were for educational purposes.  Attached to the motion are copies of the loan documents and an exhibit showing the following amounts (including unpaid principal and interest) due and owing with respect to each loan:

| | |
|---|---|
| Loan 402 | $20,173.12 |
| Loan 405 | $10,267.69 |
| Loan 408 | $ 4,308.12 |
| Loan 411 | $12,257.67 |
| Total | $47,006.60 |

Based on the loan documents, Northstar argues that there are no disputed material facts regarding the educational nature and purpose of the loans.  Accordingly, Northstar asserts that it is entitled to a judgment that the loans are excepted from the Debtor's discharge under § 523(a)(8) as a matter of law.

The Debtor filed a response to the Defendants' motion for summary judgment on April 16, 2013.  The main argument raised in the Debtor's response is that the Discharge

through Bankruptcy provision in the loan applications is unenforceable. The Debtor also asserts that various disputed material facts exist which preclude entry of summary judgment. Specifically, the Debtor argues that there is no evidence establishing that the loan applications are for loans actually made by Northstar, because the lender identified in the loan documents is University National Bank. The Debtor also alleges that the loan applications do not comprise the entire contract and that there may be other relevant documents. The Debtor does not specifically identify these other relevant documents, but only suggests they may exist.

Northstar filed a supplemental response in support of its motion for summary judgment on May 6, 2013. Attached to the supplemental response are exhibits showing sale and assignment of the loans from University National Bank to various entities, and eventually to Northstar. Also attached to the supplemental response is the affidavit of John Schwingler, Director of Portfolio Management at Northstar. (AP Dkt. No. 32, Exh. 4.) The Schwingler affidavit states that each loan application constitutes "a complete written integration of the terms of the parties. The application is the complete contract between the two parties as it contains a promissory note and incorporates materials, such as the application kit." (AP Dkt. 32, Exh. 4, ¶ 2.) Regarding the funding of the loans, the affidavit explains that the loans to the Debtor were T.H.E. Loan Program loans "made under a program sponsored by Northstar Education Finance, Inc. a non-profit institution." (Id. at ¶ 3.) University National Bank was a participant in the T.H.E. Loan Program and served as the initial lender on the loans. (Id.) After the loans were disbursed, the loans were purchased from University National Bank and "assigned via Bills of Sale to Northstar

7

Education Finance, Inc." (Id.) No affidavit undermining these facts was submitted by the Debtor.

A hearing on Northstar's motion for summary judgment was held before this court on May 14, 2013. At the hearing, the court asked counsel for Northstar whether it was relying on the purported waiver of discharge language in the Discharge through Bankruptcy provisions as a basis for its motion. (Transcript of Hearing held on 5/14/2013 at 13.) The attorney for Northstar stated that it was not asserting that the Debtor had waived his discharge with regard to the loans at issue. (Id. at 13-14.) The court also asked the Debtor if there was anything in the summary judgment record that might lead the court to believe that the loans at issue were just "regular," as opposed to educational, loans. (Id. at 16.) The Debtor responded that there was not. (Id.) The Debtor acknowledged that he had received money from the loans, and only contested facts asserted by the Debtor were those regarding the identity of the lender. (Id. at 10, 16.)

After hearing argument from both parties, the court adjourned the hearing to give the Debtor an opportunity to review Northstar's supplemental response in greater detail. An adjourned hearing on the motion for summary judgment was held on May 31, 2013. At the continued hearing, the Debtor again argued that loans were merely cash advances to help cover the Debtor's living expenses during law school, and that the loans had "no connection whatsoever to the costs of attendance at school." (Transcript of Hearing held on 5/31/2013, AP Dkt. No. 41, at 7-8.) The Debtor suggested this was particularly true for the fourth loan, Loan 411, because it was intended to provide funds for the Debtor to use after graduation and during preparation for the Bar exam. (Id. at 8.) The Debtor also

8

asserted that the Consumer Credit Notice provisions in the loan applications supported his argument that the loans were not for educational purposes. (Id. at 4.) At the conclusion of the hearing, the court took the motion for summary judgment under advisement.

## IV. DISCUSSION.

### A. *Summary Judgment Standard.*

Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56, states that a court shall enter summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986).

The initial burden to demonstrate the absence of a genuine dispute of material fact is on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Upon such a showing, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine dispute of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356 (1986). All facts and related inferences are to be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513. However, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356. "Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

B. *Nondischargeability under § 523(a)(8)*.

Section 523(a)(8) excepts certain educational loans from a debtor's discharge, unless the debtor can establish that repayment of the educational loan imposes an "undue hardship." See Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler), 397 F.3d 382, 385 (6th Cir. 2005). "The creditor bears the initial burden of proving the debt exists and that the debt is of the type excepted from discharge under § 523(a)(8)." Educ. Credit Mgmt Corp. v. Savage (In re Savage), 311 B.R. 835, 839 (Bankr. 1st Cir. 2004); see Rumer v. American Educ. Servs. (In re Rumer), 469 B.R. 553, 561 (Bankr. M.D. Pa. 2012) (collecting cases). If the creditor meets its burden, the debt may only be discharged if the debtor establishes that repayment of the debt would constitute an undue hardship. Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett), 487 F.3d 353, 358-59 (6th Cir. 2007) (to establish undue hardship, the debtor must prove each element of the three-part Brunner test by a preponderance of evidence). Because the Debtor has not alleged undue hardship, the only issues presented in this adversary proceeding are whether the Debtor owes the alleged debts to Northstar and whether the loans are among the types of educational loans excepted from discharge under § 523(a)(8).

### 1. *Does the Debtor Owe a Debt or Debts to Northstar?*

The Debtor asserts that issues of material fact exist regarding whether the debts evidenced by the four loan applications are owed to Northstar, or whether the debts are owed to some other lender. However, the identity of the lender is conclusively established

by the loan applications, the Schwingler affidavit, and the other exhibits attached to Northstar's supplemental response. These documents show that University National Bank was the original lender on the loans, but that the loans were sold and assigned to Northstar. The Debtor has not offered any evidence to contradict these documents. The Debtor owes a debt to Northstar under each of the four loan agreements.

### 2. *Are the Debts Nondischargeable Under § 523(a)(8)?*

The types of educational loans excepted from discharge under § 523(a)(8) include:

(A)   (i)     an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

     (ii)    an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B)   any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8). Northstar's motion for summary judgment does not identify the specific subsection on which it relies. The court has independently reviewed the loan documents and the statutory subsections and concludes that the loans are nondischargeable both as educational benefit loans funded by a nonprofit institution under § 523(a)(8)(A)(i) and "obligation[s] to repay funds received as an educational benefit" under § 523(a)(8)(A)(ii).[8]

Sections 523(a)(8)(A)(i) and (ii) both apply to "educational benefit" loans, a term that is not defined in the Bankruptcy Code. Although the breadth of this term has been the

_____

[8] The court has considered whether the loans may be nondischargeable under § 523(a)(8)(B). However, because the loans are nondischargeable under § 523(a)(8)(A), the court need not determine whether the loans may also be covered by subsection (B).

subject of some debate, a majority of courts determine whether a loan qualifies as an "educational benefit" by focusing on *the stated purpose for the loan when it was obtained,* rather than on how the loan proceeds were actually used. Busson-Sokolik v. Milwaukee School of Eng'g (In re Sokolik), 635 F.3d 261, 266 (7th Cir. 2011) ("[W]e hold that it is the purpose of a loan which determines whether it is 'educational.'" ), cert. denied, 131 S. Ct. 3039 (2011); Murphy v. Penn. Higher Educ. Assistance Agency (In re Murphy), 282 F.3d 868, 870 (5th Cir. 2002) (citing cases and concluding that "it is the purpose, not the use, of the loan that controls" the dischargeability determination under § 523(a)(8)); Tift County Hospital Authority v. Nies (In re Nies), 334 B.R. 495, 501 (Bankr. D. Mass. 2005) (explaining that a "majority of courts has adopted a test that determines the educational nature of the loan by focusing on the substance of the transaction which resulted in the obligation" but holding that a loan made under a physician recruitment program was not for educational purposes) (citations omitted); contra In re Ealy, 78 B.R. 897, 898 (Bankr. C.D. Ill. 1987) (holding, under a prior version of § 523(a)(8), that the "test for determining whether a loan is a student loan is whether the proceeds of the loan were used for 'educational purposes'").

Courts adopting the "purpose test" have held that focusing on the purpose of the loan "seems most consistent with the language of § 523(a)(8)(A)." In re Sokolik, 635 F.3d at 266. As explained by the Fifth Circuit Court of Appeals, § 523(a)(8) "does not expressly state that only loans 'used for tuition' are nondischargeable. Nor does it define educational loans as excluding living or social expenses." In re Murphy, 282 F.3d at 871. Loans that enable a student to pay for room, board, and other living expenses while

12

attending school facilitate the student's education and "certainly [have] educational benefits." Id. at 871-72.

Focusing the analysis on the purpose of the loan, rather than the use of the proceeds, also avoids potential inequities that could result from application of a "use" test.

> [A test that is based on the use of the loan proceeds] would enable students who abuse funds intended for their education to receive the benefit of a discharge, while those who use the loan proceeds as intended would "retain the burden of paying them even after a chapter 7 discharge." Murphy, 282 F.3d at 873. The "purpose" test avoids this potential problem by refocusing the inquiry on the nature and character of the loan. For example, rather than trying to determine whether a computer purchased with loan money was used for schoolwork, personal use or some combination of both, *we need only ask whether the lender's agreement with the borrower was predicated on the borrower being a student who needed financial support to get through school.*

In re Sokolik, 635 F.3d at 266 (emphasis added). This court agrees that it is the purpose of the loan which determines whether the loan constitutes an "educational benefit."[9]

In this adversary proceeding, the undisputed facts establish that the four loans at issue were made for educational purposes and were predicated on the Debtor being a student. The introductory paragraph in each loan application identifies the loan as an "education assistance loan" made under the Total Higher Education Loan Program. The

---

[9] This court's conclusion that the educational nature of a loan is determined by the purpose of the loan, rather than by the use of the loan proceeds, is further supported by Andrews University v. Merchant (In re Merchant), 958 F.2d 738, 740-41 (6th Cir. 1992). While attending Andrews University, the debtor in Merchant received loans from a private bank and extensions of credit from the university to help pay for her educational expenses. One of the primary issues addressed by the Sixth Circuit was whether the extensions of credit from the university were educational "loans" for purposes of § 523(a)(8). Because the debtor "signed forms evidencing the amount of her indebtedness before she registered for classes" and "received her education from the University by agreeing to pay these sums of money . . . after graduation," the court concluded that "the credit extensions were loans for educational expenses." Id. at 741.

13

Discharge through Bankruptcy provisions in the applications for Loans 402, 405, and 408 explicitly state that the loans are being made for "educational purposes."[10] The application for Loan 411 provides that the student "must be in the final year of law school" and "on target to graduate" to qualify for the loan. The Debtor signed each loan application as the "Student," which is defined as "the student whose education this Loan is being made to finance." Thomas M. Cooley Law School electronically certified the applications for Loans 402, 405, and 408 in the "School" section.

None of the arguments raised by the Debtor are sufficient to overcome the plain language of the loan application documents, which specifically and repeatedly reference the educational nature of the loans. For instance, the Debtor has asserted, both in his complaint and at oral argument, that the loans were general cash advances to cover living expenses during law school and immediately after graduation. The Debtor has offered no evidence to support this argument. However, even if the court accepts the Debtor's factual representations as true, such facts do not alter the dischargeability analysis. Section 523(a)(8)(A) makes no distinction between loans "used for tuition" and those used to pay other expenses. In re Murphy, 282 F.3d at 869 (portion of federal student loan used by debtor to purchase a car and to pay for housing, food, and fraternity dues is excepted from

---

[10] In his brief opposing Northstar's motion for summary judgment, the Debtor devotes a majority of his argument to the fact that this statement is made in a section of the loan application that also purports to preclude discharge of the loans in any future bankruptcy case. As stated by counsel for Northstar at the hearings on its motion, Northstar has not asserted that the Debtor waived his discharge with regard to the loans at issue in this adversary proceeding. Accordingly, the court has not considered any purported waiver of discharge in this opinion. This court's conclusion that the loans are nondischargeable is based solely on the numerous provisions in the loan applications that unequivocally establish that the loans were made for educational purposes.

14

discharge). Further, under the "purpose test," the Debtor's actual use of the loan proceeds is immaterial. It is the nature of the loans that controls. The loan documents conclusively establish that the loans were premised on the Debtor's status as a student and were for educational purposes. Likewise, the Consumer Credit Notice provision, the only evidence the Debtor identified in the summary judgment record that would suggest the loans were for anything other than educational purposes, does not alter the educational nature of the loans.

Accordingly, the court concludes that the loans from Northstar are "obligations to repay funds received as an educational benefit" under § 523(a)(8)(A)(ii). Because the loan applications and the Schwingler affidavit also establish that the loans were funded under a program sponsored by Northstar, and that Northstar is a non-profit institution, the loans are also excepted from the Debtors discharge under § 523(a)(8)(A)(i).

## V. CONCLUSION.

The summary judgment record establishes that loans received by the Debtor from Northstar were for educational purposes and are excepted from the Debtor's discharge under § 523(a)(8)(A)(i) and (ii). Northstar's motion for summary judgment is granted, and a separate order shall be entered accordingly.

Dated this 8th day of July, 2013
at Grand Rapids, Michigan.

Honorable James D. Gregg
Chief United States Bankruptcy Judge

15